UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>)<br>ROBERT TAYLOR, EVAN HERRELL, )<br>MARK GRENKOSKI, AND EVA MISRA, )<br>)<br>Defendants. ) | Case No. 6:21-cr-00013-GFVT-HAI-2<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

*** *** *** ***

This matter is before the Court on Defendant Robert Taylor's Motion to exclude or limit expert testimony. [R. 407.] In his motion, Dr. Taylor seeks to restrict the testimony of Dr. Mark Jorrisch and Dr. Miguel Brito under the Federal Rules of Evidence and Federal Rules of Criminal Procedure. *Id.* at 5-7. In addition, the United States requests leave to file a response that exceeds twenty-five pages and Defendants Herrell, Misra, and Grenkoski move to join Dr. Taylor's motion and reply to the United States' response. [R. 457; *see* R. 408; 479.] For the reasons below, the Motions to Join [R. 408; R. 409; R. 415; R. 479; R. 481; R. 483] are **GRANTED**, the Motion for Leave to File Excess Pages [R. 457] is **GRANTED**, and the Motion to exclude or limit expert testimony [R. 407] is **DENIED**.

**I**

The eleven Defendants in this matter are charged with twenty-seven counts arising from their practices at EHC Medical Offices, a medical clinic in Tennessee. [R. 1.] Eight of the defendants were physicians who provided treatment at EHC. *Id.* at 7. Against the Movants—Defendants Rober Taylor, Evann Herrell, Mark Grenkoski, and Eva Misra—the indictment

alleges a conspiracy to violate the Controlled Substances Act by distributing prescriptions issued without a legitimate medical purpose outside of the usual course of professional practice and a conspiracy to make false statements. *Id.* at 7-9. Against all Movants besides Ms. Misra, the indictment also alleges conspiracies to defraud health care benefit programs by submitting false claims for prescription reimbursement and urine testing. *Id.* at 15-21.

The United States retained two experts to provide testimony for its case against the Defendants: Dr. Jorrisch and Dr. Brito. Dr. Jorrisch is a physician who has experience in internal medicine. [R. 407-3.] The United States anticipates that Dr. Jorrisch will testify about the legitimate medical purpose for prescribing controlled substances and the usual course of professional practice for addition medicine. [R. 407-1.] Dr. Jorrisch will also testify about whether, in his opinion, EHC conformed to these standards, and he will respond to hypothetical questions. *Id.* Dr. Brito has experience as a pathologist and currently acts as a chief medical officer for a Medicare administrative contractor. [R. 407-5.] The United States anticipates that Dr. Brito will testify about the requirements for Medicare reimbursement claims for urine drug testing. [R. 407-4 at 1.]

Dr. Taylor now moves to exclude or limit Dr. Jorrisch and Dr. Brito's opinions. [R. 407.] In addition, the United States requests leave to exceed the Court's twenty-five page limit to adequately respond to Dr. Taylor's motion, and Drs. Herrell, Grenkoski, and Misra move to join Dr. Taylor's motion and reply to the United States' response. [R. 457; R. 408; R. 409; R. 415; R. 479; R. 481; R. 483.]

**II**

The Movants' motion first argues that Dr. Jorrisch and Dr. Brito's opinions should be excluded under the Federal Rules of Evidence. [R. 407 at 7-19.] Next, the Movants argue that the United States provided insufficient notice of the experts' opinions under the Federal Rules of Criminal Procedure. *Id.* at 20. The Movants request a hearing to decide these issues. *Id.* at 1. The Court will address each argument in turn.

**A**

Federal Rule of Evidence 702 governs the admissibility of expert testimony and provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 thus directs trial judges to exclude unreliable expert testimony. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993) (describing a trial judge's responsibility as a "gatekeeping role" for expert testimony). At the discretion of the trial court, expert testimony is admissible if the testimony satisfies three requirements: (1) the expert must be qualified, (2) the testimony must be relevant, and (3) the testimony must be reliable. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008).

The proponent of expert testimony must satisfy these requirements by a preponderance of the evidence. *See Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001). But the Court cannot "impinge on the role of the jury or opposing counsel." *Burgett v. Troy-Bilt LLC*, 579 F. App'x 372, 377 (6th Cir. 2014). Instead, "vigorous cross-examination, presentation of

contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. As a result, the rejection of expert testimony "is the exception, rather than the rule." *See In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530.

The proposed expert testimony is admissible because the United States has established that (1) Dr. Jorrisch and Dr. Brito are qualified to provide expert opinions in their respective fields, (2) their testimony will help the jury understand the usual course of professional practice for addiction medicine or Medicare's reimbursement rules, and (3) their testimony is reliable. The appropriate means for the Movants to dispute the testimony is not exclusion but thoughtful cross-examination and the presentation of counter-evidence. *See Daubert*, 509 U.S. at 596.

1

When determining the admissibility of expert testimony, the threshold requirement is that the witness must be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702; *Bradley v. Ameristep, Inc.*, 800 F.3d 205, 208 (6th Cir. 2015). Whether a witness's experience qualifies him as an expert depends on the nature and extent of the witness's experience. *Id.* at 209 (citing *United States v. Cunningham*, 679 F.3d 355, 379-80 (6th Cir. 2012)). Although a witness is not qualified to be an expert because he identifies as one, "we take a liberal view of what 'knowledge, skill, experience, training, or education' is sufficient to satisfy this requirement." *Id.* (quoting *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000)). The Movants contend that neither Dr. Jorrisch nor Dr. Brito are qualified to provide their opinions.

The United States anticipates that Dr. Jorrisch will explain the usual course of professional practice for addiction medicine and the legitimate medical purpose for prescribing controlled substances. [R. 407-1 at 1.] Dr. Jorrisch has practiced addiction medicine for about

4

thirty years since completing his residency in internal medicine. [R. 407-3.] During this time, Dr. Jorrisch gained experience prescribing buprenorphine products through treating patients for opioid use disorder. *Id.*; [R. 458 at 2-3.] Moreover, Dr. Jorrisch has acted as the medical director of several treatment clinics, has taught internal medicine for decades, and helped developed Kentucky's standards for Office Based Opioid Treatment. [R. 407-3.]

The United States carried its burden of establishing that Dr. Jorrisch is qualified to offer expert testimony about addiction medicine. Through his extensive education, training, and experience, Dr. Jorrisch can help the jury understand addiction medicine. *See Bradley*, 800 F.3d at 208. The Movants argue that "it is not apparent that he is qualified to speak in the context in which EHC operated" because Dr. Jorrisch "primarily work[s] in an urban environment." [R. 407 at 13-14.] The Movants do not explain, and the Court cannot discern, how internal medicine differs between an urban environment and EHC's unexplained "context." The Movants further argue that even if Dr. Jorrisch is qualified to explain the usual course of professional practice for addiction medicine, he cannot provide expert testimony about how a doctor considers community safety concerns when deciding a patient's treatment. *Id.* at 14; [R. 407-2 at 17.] But because Dr. Jorrisch has extensive education, training, and experience prescribing buprenorphine products, he is qualified to opine on risks that doctors consider when determining treatment options.

The United States anticipates that Dr. Brito will testify about Medicare's reimbursement rules for urine drug testing. He is qualified to provide this testimony. In his role as chief medical officer at a Medicare administrative contractor, Dr. Brito helps develop Medicare local coverage determinations that detail when medical services are reasonable and necessary such that they may be reimbursed. [R. 458 at 25.] This role also provides Dr. Brito with an understanding

5

of local coverage determinations specifically applicable to urine testing. *Id.* The Movants argue that Dr. Brito is not qualified to testify about Medicare reimbursement because he "is not an addiction medicine expert, nor is he an expert in interpreting and applying drug screen results." [R. 407 at 19.] But as the United States notes, Dr. Brito will testify about Medicare reimbursement of urine testing, not about interpreting or applying urine tests. [R. 458 at 25.] Thus, through his experience as a physician and his work as a chief medical officer, Dr. Brito is qualified to testify about Medicare reimbursement rules.

**2**

Proffered expert testimony must also be relevant to be admissible. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529. Testimony is relevant if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* (quoting Fed. R. Evid. 702). Because "scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes," courts must consider whether a particular expert's testimony will truly assist the trier of fact to understand the evidence in the case at hand. *Daubert*, 509 U.S. at 591.

Otherwise relevant testimony "is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). However, a party cannot introduce testimony containing a legal conclusion. *See Torres v. Cty. of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985). Testimony contains a legal conclusion "only if 'the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular.'" *United States v. Volkman*, 797 F.3d 377, 388 (6th Cir. 2015) (citing *id.*). While an expert may not simply recite legal principals, an expert may provide background on legal regulations. *Compare Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 593 (6th Cir. 2014) (affirming the district court's decision to exclude testimony that defined the term "incidental," explored issues raised during an agency's

rulemaking process, and characterized the agency's view of certain regulations), *with Univ. of Pittsburgh v. Townsend*, No. 3:04-cv-291, 2007 U.S. Dist. LEXIS 24620, at *28 (E.D. Tenn. Mar. 30, 2007) (allowing testimony about general customs and practices of technology transfer under the Bayh-Dole Act). Consequently, an expert cannot testify about the overarching question of guilt or innocence, but the expert may provide testimony that suggests the answer "or that give the jury all the information from which it can draw inferences as to the ultimate issue." *Volkman*, 797 F.3d at 388 (citing *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994)).

Dr. Jorrisch's expert testimony will help the jury determine a fact at issue in the trial. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529. At trial, the United States must establish that the Defendants conspired to issue prescriptions without "a legitimate medical purpose by an individual practitioner acting within the usual course of his professional practice." 21 C.F.R. 1306.04(a). The United States anticipates that Dr. Jorrisch will testify about the usual course of professional practice in addiction medicine and the legitimate medical purpose for prescribing controlled substances. [R. 407-1.] By providing testimony on the standard the jury will use, Dr. Jorrisch's testimony will help the jury determine whether the Defendants issued a prescription for a legitimate medical purpose and whether the practitioners acted within the usual course.

However, the Movants argue that Dr. Jorrisch's testimony will include a legal conclusion because he intends to "interpret[] Tennessee guidelines to require specific components of addiction treatment" and testify about whether EHC made prescriptions within the usual course of professional practice. [R. 407 at 9-10.]

Dr. Jorrisch's anticipated testimony does not contain a legal conclusion because he references state medical guidelines. Dr. Jorrisch does not, as the Movants argue, interpret state guidelines to require specific components of addiction treatment. *See Townsend*, 2007 U.S. Dist.

LEXIS 24620, at *28 (allowing testimony about customs and practices under the Bayh-Dole Act). Dr. Jorrisch's testimony provides his opinion about generally accepted medical standards. [R. 407-2 at 1.] Though he references state guidelines, Dr. Jorrisch's does not base his opinion "solely on whether a given practice comported with these resources. Instead, [Dr. Jorrisch] ha[s] applied the totality of [his] knowledge." *Id.* Moreover, courts often allow evidence of general standards for medical practices to help the jury determine whether conduct falls outside the course of professional practice. *See, e.g.*, *United States v. Feingold*, 454 F.3d 1001, 1007 (9th Cir. 2006); *see also United States v. Hughes*, 895 F.2d 1135, 1144-45 (6th Cir. 1990) (holding that the trial court properly permitted expert testimony about generally acceptable medical standards that considered Michigan medical regulations).

Further, Dr. Jorrisch's testimony does not contain a legal conclusion because he opines about the usual course of professional practice for addiction medicine and the legitimate medical purpose for prescribing controlled substances. The Sixth Circuit has squarely decided that an opinion on the legitimate medical purpose for prescriptions "does not carry with it a 'separate, distinct and specialized meaning' from its medical counterpart" and thus may be admitted. *Volkman*, 797 F.3d at 389 (citing *Torres*, 758 F.2d at 150); *see also United States v. Kirk*, 584 F.2d 773, 785 (6th Cir. 1978) (allowing testimony relating to the "generally acceptable standards of medical practice for issuing prescriptions").

Dr. Brito's expert testimony also will help the jury determine a fact at issue in trial. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529. The United States must establish at trial that urine drug tests ordered by EHC were not reasonable and necessary for treatment. *See* 42 U.S.C. § 1395y(a)(1)(A); 42 C.F.R. § 410.32; [R. 1-1 at 6.] Dr. Brito intends to explain Medicare reimbursement requirements for urine drug testing, including the reasonable and necessary

8

requirement, and local coverage determinations that detail when urine drug testing is reasonable and necessary. [R. 458 at 23; R. 407-4 at 1-2.] By explaining local coverage determinations for urine drug tests, Dr. Brito will help the jury determine whether the Defendants sought reimbursement for tests not reasonable and necessary. *See, e.g.*, *United Staes v. Bertram*, No. 3:15-cr-14-GFVT-REW, 2016 U.S. Dist. LEXIS 155472, at *7 (E.D. Ky. Nov. 9, 2016) ("[T]estimony about Medicare guidelines on when and how entities like [Company] should order urine drug testing is relevant to the charges against Defendants as managers … because the indictment includes a conspiracy charge.") (*aff'd*, 900 F.3d 743 (2018)).

The Movants argue that Dr. Brito's testimony is irrelevant because local coverage determinations apply only to Medicare claims, and EHC treated some patients that were not covered by Medicare. [R. 407 at 17.] However, as explained above, local coverage determinations are relevant to charges relating to Medicare and those EHC patients that were insured by it. Introducing testimony not relevant to private-insurance claims does not make the testimony irrelevant to as to Medicare-related claims. The Movants also argue that local coverage determinations are not relevant because they "do not have the same force of law as statute or regulations." [R. 407 at 18.] But even though they cannot be the basis for independent violations of the law, local coverage determinations are still relevant as "proof of [] alleged fraud." *United States v. Gutti*, No. 3:19-cr-00022-GFVT-EBA, 2020 U.S. Dist. LEXIS 209177, at *10 (E.D. Ky. Nov. 9, 2020).

Further, the Movants contend that Dr. Brito's testimony about rules and regulations for Medicare coverage constitutes legal conclusions that are not proper for expert testimony. [R. 407 at 17.] Yet "allowing this type of expert testimony in similar federal prosecutions is common practice." *Bertram*, 2016 U.S. Dist. LEXIS 155472, at *7. The law makes clear that

9

experts may testify about how the government applies Medicare rules and regulations "as long as the testimony does not incorrectly state the law or opine on certain legal issues in the case." *Id.* (citing *United States v. Davis*, 471 F.3d 783, 788-89 (7th Cir. 2006)).

Therefore, the expert opinions of Dr. Jorrisch and Dr. Brito will assist the jury to understand the evidence or determine a fact in issue, and neither expert indicates that they will offer testimony including a legal conclusion. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529 (quoting Fed. R. Evid. 702).

**3**

Under Rule 702's third requirement, the proffered testimony must be reliable. *Id.*; *see also Daubert*, 509 U.S. at 590. In determining reliability, a trial court should assess whether the testimony is the "product of reliable principles and methods," whether the expert "has applied the principles and methods reliably to the facts of the case," and whether the testimony is based on "sufficient facts or data." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529. A court deciding reliability does not determine whether the testimony is correct; rather, a court determines whether the testimony rests upon a reliable foundation as opposed to unsupported speculation. *See id.* at 529-30.

The Supreme Court has listed several factors that courts should consider when determining whether expert testimony is the product of reliable principles and methods. *Daubert*, 509 U.S. at 592-94. These factors include whether a theory or technique can be or has been tested; whether the theory has been subjected to peer review and publication; whether there is a high known or potential error rate; whether there are certain operation standards that should have been or were followed; and whether the theory or technique is generally accepted within the scientific community. *Id.*

When determining whether the testimony is based on sufficient facts or data, courts allow an expert to use information on which other experts in the field would rely, even if the underlying information is not admissible. Fed. R. Evid. 703. To testify about generally acceptable standards of medical practice, experts may consider state guidelines. *See, e.g.*, *Hughes*, 895 F.2d at 1144. An expert may also draw upon his or her personal knowledge or experience when testifying. *See, e.g.*, *First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001) (allowing expert testimony "derived largely from [the expert's] own practices experiences throughout forty years" in the industry).

Dr. Jorrisch's testimony is reliable under Rule 702. The principles and methods that Dr. Jorrisch applies derive from his thirty years of experience in internal medicine, education, and state medical guidelines. [R. 407-1.] Although Dr. Jorrisch's testimony cannot be easily examined under the *Daubert* factors, the factors are non-exhaustive and are "only of limited help in assessing technical or experiential expertise" like the opinion on the usual course of professional medical practice here. *Barreto*, 268 F.3d at 334 (internal quotation omitted). Moreover, the facts and data that form the basis of his testimony include forty-four patient charts, including patient history from 2014 through early 2019, audio and video recordings of patient visits for five patients, and EHC's 2017 policy manual. [R. 407-2 at 1, 65.] In total, Dr. Jorrisch reviewed patient files for over 1,000 visits and over thirty recorded visits. [R. 458 at 12.] Consequently, Dr. Jorrisch applied reliable principles and methods to sufficient facts and data. *See United States v. Stapleton*, No. 12-11-ART-(1), 2013 U.S. Dist. LEXIS 108189, at *13-18 (E.D. Ky. July 31, 2013) (admitting expert testimony about whether prescriptions complied with medical standards and whether they had a legitimate medical purpose based on medical guidance and the expert's experience and applied to patients' records of treatment).

The Movants argue that Dr. Jorrisch's testimony is not based on sufficient facts or data. [R. 407 at 8-16.] They argue that his facts and data are not sufficient because Dr. Jorrisch reviewed a subset of patient files that "does not reflect a statistically significant" size and that the files were "likely cherry-picked by the government." *Id.* at 12. In addition, the Movants argue that Dr. Jorrisch should consider federal prescription standards and the state guidelines he references were not in effect during the entire relevant period. *Id.* at 8-10. But as explained above, the patient files, patient recordings, and policy manual are sufficient facts to form an opinion, and the Movants offer no evidence suggesting that the government targeted files that do not represent EHC practices. In addition, Dr. Jorrisch will not rely on guidelines but expects to testify that the guidelines that he considers are consistent with his understanding of the appropriate medical standards. [R. 407-2 at 1; R. 458 at 9.] The Movants must attack Dr. Jorrisch's opinion through the traditional and appropriate methods: cross-examination and the presentation of proof. *Daubert*, 509 U.S. at 596.

Dr. Brito's testimony is also reliable under Rule 702. The Movants contend that Dr. Brito's testimony is unreliable because the testimony "creates a conflict with the charges." [R. 407 at 19.] Yet the Movants fail to explain how comparing expert testimony with the indictment impacts Rule 702's reliability analysis, and the Court is unaware of any case excluding evidence as unreliable because it might not help the proponent's case. In any event, the testimony does not appear to "conflict with the charges." The indictment alleges that EHC ordered urine drug testing "so that its physicians would appear to be acting within the usual course of professional practice." [R. 1 at 16.] The United States anticipates that Dr. Brito will testify that repeatedly ordering the same test for patients is not medically reasonable and necessary. [R. 407-4; R. 458 at 25.] Both allegations could support the United States' theory that EHC ordered unnecessary

12

tests to appear legitimate but failed to properly consider those tests as other physicians would. [R. 458 at 25.]

Therefore, the United States' proffered expert testimony is admissible under Rule 702 because Dr. Jorrisch and Dr. Brito are qualified to provide expert opinions in their respective fields, the testimony will help the jury understand the evidence or determine a fact in issue, and the testimony is reliable.

**B**

The Movants argue that the expert testimony also should be excluded because the government provided insufficient notice of the testimony. [R. 407 at 20.] Under Federal Rule of Criminal Procedure 16(a)(1)(G), the United States must, at a defendant's request, give the defendant a summary of any expert testimony that the United States intends to use during its case-in-chief. The summary must describe the witness's opinions, the bases and reasons for the opinions, and the witness's qualifications. *Id.* The summary is insufficient if a similar expert hired by the defendant "would not have been able to analyze the steps that led" the expert to their conclusions. *United States v. Davis*, 514 F.3d 596, 613 (6th Cir. 2008) (holding the expert summary insufficient where the document "devoted one sentence to the bases for the opinions").

Here, the summaries outlining Dr. Jorrisch and Dr. Brito's expert opinions provided sufficient information to the Movants. Dr. Jorrisch provided a sixty-six-page disclosure that discussed his impressions of and specific concerns about EHC's prescription practices. [R. 407-2.] Dr. Jorrisch's summary also includes references to the state guidelines that he consulted and describes each of the forty-four patient records that he reviewed. *Id.* Likewise, the United States provided seven pages about Dr. Brito, including five pages discussing Dr. Brito's expected testimony and the bases for his opinions. [R. 407-4; R. 407-5.] The summary specifically details

13

his opinions about the requirements for Medicare reimbursement and local coverage determinations relating to urine drug testing. [R. 407-4.] Both expert summaries provide the Movants with enough information to analyze the steps that led to Dr. Jorrisch and Dr. Brito's conclusions. *See Davis*, 514 F.3d 596, 613. But even if the summaries insufficiently described the experts and their opinions, suppression of the opinions would be improper. *See United States v. Ledbetter*, 929 F.3d 338, 350 (6th Cir. 2019) ("The court could have, for instance, merely granted a continuance so that defendants had sufficient time to prepare for [the expert's] testimony.").

### C

The Movants request a hearing to evaluate the admissibility of the government's expert testimony. [R. 407 at 1.] However, a hearing on the matter is unnecessary. Generally, a district court can comply with *Daubert* without holding a hearing. *See Nelson*, 243 F.3d at 249. A district court properly exercises its discretion to not hold a *Daubert* hearing when the parties fully brief the issues and there is an adequate basis from which to determine the admissibility of the expert opinions. *See id.*; *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 532 (holding that the district court did not abuse its discretion when "the record on the expert testimony was extensive, and the Daubert issue was fully briefed by the parties"). Here, the United States gave the Movants written summaries of the anticipated expert testimony, including the experts' qualifications. [R. 407-2; R.407-3; R.407-4; R. 407-5.] The parties then fully briefed the issue through their motion, response, and reply. Because the parties fully briefed the Court and the Court has an adequate basis on which to decide the admissibility of the testimony, a hearing is unnecessary. *See Nelson*, 243 F.3d at 249.

## III

The Movants contend that, if the Court finds the expert testimony admissible, the Court should provide instructions limiting the expert testimony to admissible parameters and preventing the government's experts from using hypothetical situations that "implicate [the] concerns identified." [R. 407 at 9, 11, 21.] However, these questions should be decided at trial in the context of the testimony. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendants Herrell, Grenkoski, and Misra's Motions to Join **[R. 408; R. 409; R. 415]** are **GRANTED** to the extent they seek leave to Join Dr. Taylor's Motion [R. 407];

2. The United States' Motion for Leave to exceed the Court's page limit **[457]** is **GRANTED**;

3. Defendants Herrell, Misra, and Grenkoski's Motions to Join **[R. 479; R. 481; R. 483]** are **GRANTED** to the extent they seek leave to Join Dr. Taylor's reply [R. 260]; and

4. The Movants' Motion to Exclude **[R. 407]** is **DENIED**

This the 1st day of December, 2022.

Gregory F. Van Tatenhove
United States District Judge