UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) Crim. No. 6:21-cr-00013-GFVT-HAI <br> v. ) <br> ) **MEMORANDUM OPINION** <br> EVANN HERRELL, MARK GRENKOSKI, ) **&** <br> STEPHEN CIRELLI, and EVA MISRA, ) **ORDER** <br> ) <br> Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Defendants'—Evann Herrell, Mark Gernkoski, Stephen Cirelli, and Eva Misra's—Motion to Reconsider. [R. 642.] Previously, the Court excluded testimony from the Defendants' expert witness, Dr. James Murphy, regarding the treatment of some of their patients. Although Dr. Murphy drew conclusions on the care of forty-four individuals, he only discussed three patients in any detail. Due to this deficiency, the Court prohibited Dr. Murphy from discussing the specific cases of the other forty-one subjects at trial. Now, the Defendants provide a supplemental disclosure from Dr. Murphy and ask the Court to reconsider. Criminal defendants should not use Court orders to test the deficiency of required filings. Despite this misgiving, the Court will **GRANT** their Motion **[R. 642]** because justice requires that they be able to meet the Government's case regarding these additional forty-one patients.

**I**

The United States charged eleven defendants with a total of twenty-seven counts, including conspiracy to unlawfully distribute controlled substances, conspiracy to falsify medical records related to a health care benefit program, and conspiracy to defraud Medicare and

Kentucky Medicaid. [R. 1-1 at 9–10, 11–14, 15–17.] These allegations stem from the Defendants' involvement with EHC, a medical facility "designed to combat the opioid epidemic" that was founded by Dr. Robert Taylor. *Id.*; [R. 190 at 1–2.] At trial, Dr. Evann Herrell, Dr. Mark Grenkowski, Dr. Stephen Cirelli, and Dr. Eva Misra intend to introduce the expert testimony of Dr. James Murphy and Dr. Richard Soper. [R. 642 at 1; R. 574-2; R. 574-3.]

The United States moved to exclude portions of Dr. Murphy and Dr. Soper's testimony. [R. 574.] In part, the United States based its argument on defects with the doctors' disclosures of their expert opinions. *Id.* at 5. While Dr. Murphy reviewed forty-four patient files from EHC, his report only provided specifics as to three patients, identified as CR, JV, and TM. [R. 574-2 at 24–26; R. 642 at 2.] Meanwhile, Dr. Soper did not reference any particular patient in his report. [R. 574 at 28; *see also* R.574-3.] Accordingly, the Government asked the Court to restrict Dr. Murphy's testimony about specific patients to the three that he discussed in his report and to prevent Dr. Soper from pontificating about any particular patient. [R. 574 at 22, 28.]

The Defendants disagreed and argued that the doctors should receive no limitations on their testimony. [R. 576 at 15, 20.] They claimed that Dr. Murphy used the three patients in his report as examples that represent his overall analysis. *Id.* at 15. As to Dr. Soper, the Defendants argued that precedent does not require an expert to proffer a patient-by-patient breakdown prior to testifying about the treatment of any specific patient. *Id.* at 20.

Ultimately, the Court granted a portion of the Government's request. [R. 620 at 16.] Under a prior order, the doctors would be permitted to discuss their overall conclusions about EHC's prescribing practices. *Id.* at 14. But they would not be allowed to testify about specific patients whom they did not discuss in their reports. *Id.* at 15.

2

The Defendants have persisted in their quest to allow Dr. Murphy to review additional patients. Seeking to cure its defects, they produced a supplement to Dr. Murphy's prior disclosure that includes details on all forty-four individuals. [R. 642-1.] They now ask the Court to reconsider its prior order. [R. 642.] The United States continues to oppose the admission of this evidence. [R. 652.] The matter is now ripe for review.

## II

### A

Although the Federal Rules of Criminal Procedure do not formally recognize a motion to reconsider, district courts have inherent authority to entertain them. *United States v. Rollins*, 607 F.3d 500, 502 (7th Cir. 2010) (citing *United States v. Healy*, 376 U.S. 75 (1964) ("The Justices have concluded that motions to reconsider in criminal prosecutions are proper and will be treated just like motions in civil suits.")); *accord United States v. Gomez-Gomez*, 643 F.3d 463, 471–72 (6th Cir. 2011) (affirming a district court's treatment of a criminal motion to reconsider). Like their civil counterparts, however, motions to reconsider rulings in criminal cases have traditional limits. *See Gomez-Gomez*, 643 F.3d at 472 (criminal context); *see also Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (civil context). A district court can deny a motion to reconsider if it is based on material that was available to the defendant when the matter was first litigated. *Gomez-Gomez*, 643 F.3d at 472. That said, district courts have latitude to grant motions to reconsider "as justice requires." *Rodriguez*, 89 F. App'x at 959; *see also United States v. Hofstetter*, No. 3:15-cr-27-TAV-DCP, 2019 U.S. Dist. LEXIS 211492, at *6 (E.D. Tenn. Dec. 9, 2019) (applying the *Rodriguez* standard to a criminal motion).

To support their request, the Defendants invoke the Sixth Amendment. [R. 642 at 4.] They suggest that excluding Dr. Murphy's testimony as to any of the patients that he has

3

reviewed and now disclosed would "prejudice the defendants and deny them their due process right to present a defense." *Id.*

The Sixth Amendment provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. This provision "guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). But that promise does not permit a defendant to "ride roughshod over reasonable evidentiary restrictions." *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003). Defendants "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973).

In extreme cases, the exclusion of testimony through strict application of evidentiary rules can violate the Sixth Amendment. *See United States v. Vasilakos*, 508 F.3d 401, 410 (6th Cir. 2007). The rules only violate the constitution if they are arbitrary or "disproportionate to the purposes they are designed to serve." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). A court must balance the defendant's desire to present a complete defense with "other legitimate interests in the criminal trial process." *Rockwell*, 341 F.3d at 513 (quoting *Scheffer*, 523 U.S. at 308). Ultimately, the rules only bow if they serve "no legitimate purpose" and the matter "implicate[s] a sufficiently weighty interest of the defendant." *Vasilakos*, 508 F.3d at 410 (quoting *Scheffer*, 523 U.S. at 309 and *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006)).

Federal Rule of Criminal Procedure 16 governs disclosures in criminal cases. Upon the Government's request, the defendant must disclose information regarding his expert witnesses. Fed. R. Crim. P. 16(b)(1)(C)(i). Among other things, this includes a statement of the expert's

4

opinions that the defendant will elicit in his case in chief, the bases and reasons for them, and the expert's qualifications. *Id.* 16(b)(1)(C)(iii). District courts have discretion to craft a remedy if a defendant fails to comply with Rule 16, including forcing the defendant to make further disclosures, granting a continuance, excluding evidence, or entering any other order that is just under the circumstances. Fed. R. Crim. P. 16(d)(2)(D); *United States v. Hardy*, 586 F.3d 1040, 1043 (6th Cir. 2009). Exclusion is "the most serious and least favored" of these remedies. *United States v. Stone*, 218 Fed. App'x 425, 435 (6th Cir. 2007) (citing *United States v. Ganier*, 468 F.3d 920, 927 (6th Cir. 2006)). That said, if exclusion is appropriate under the Rule, the Sixth Amendment right to compulsory process is not violated. *United States v. Hardy*, 586 F.3d 1040, 1043 (6th Cir. 2009).

The Government argues that the supplemental disclosure does not satisfy Rule 16. [R. 652 at 4.] It suggests that "complex testimony will require more substantial disclosures." *Id.* (quoting *United States v. Rakhit*, 2020 WL 5530056, at *9 (N.D. Ohio Sept. 15, 2020)). Then, it complains that "Dr. Murphy largely restates information, ostensibly taken from the patient files, without describing the actual treatment or actions provided by EHC providers." *Id.* The United States contends that this analytic gap fails to disclose "the bases and reasons" for Dr. Murphy's opinions, as required by the rule. *Id.*

The disclosure is not as threadbare as the Government depicts it. Dr. Murphy's original disclosure details his extensive background in anesthesiology, pain management, and addiction medicine. [R. 574-2 at 1–2.] Notably, he claims "years of experience as an independent physician reviewer responsible for determining the reasonableness and medical necessity of interventional pain procedures and prescriptions." *Id.* at 2. He explained that "[a]ny treatment plan for a patient should be based on the physician's clinical judgment and individualized,

5

patient-centered decision-making . . . considering such factors as the patient's physical and psychological functioning, support needs, expected health outcomes and well-being, home environment and work responsibilities." *Id.* at 5.

In the supplement, Dr. Murphy applies these factors to the forty-four patients' records. For example, EHC treated patient JD for opiate dependency and chronic pain. [R. 642-1 at 14.] In his original disclosure, Dr. Murphy explained that one of the drugs prescribed by EHC, buprenorphine, which is contained in Suboxone, is typically prescribed multiple times per day to treat pain rather than once-a-day for opioid use disorder. [R. 574-2 at 6.] Dr. Murphy opined that JD's records demonstrated a history of using opioids to deal with her pain. [R. 642-1 at 14.] Accordingly, EHC initially believed that JD's primary motive for seeking treatment was pain and treated her with Suboxone. *Id.* at 14–15. Later, EHC changed its opinion and changed the primary diagnosis to opiate dependency. *Id.*

The Government complains that Dr. Murphy's discussion of the patients does not include information like dosage, drug screen results, and physical exams. [R. 652 at 4.] Perhaps that level of detail would make for a more compelling report, but its absence does not render the report indecipherable. Viewed together, Dr. Murphy's original disclosure and his supplement provide his opinions on what treatments are appropriate, the details that should lead to a particular prescription, and then the characteristics that he found important in the patients' records. The Government may feel that these opinions are incorrect or insufficiently reasoned. But that is an issue better resolved by cross-examination than by a motion asking for exclusion.

On that point, the Government also suggests that Dr. Murphy's report does not contain enough detail for it to prepare to cross-examine him. [R. 652 at 5.] The Government points to a case in which the Sixth Circuit upheld a district court's decision to exclude expert testimony

6

where the disclosure was "extremely vague . . . ." *Id.* (citing *United States v. Anderson-Bagshaw*, 509 F. App'x 396, 410 (6th Cir. 2012)). There, a physician reviewed the defendant's psychological condition. *Anderson-Bagshaw*, 509 F. App'x at 410. The expert's disclosure stated only that the doctor would provide "opinions" about the effects of the defendant's mental condition without disclosing what those opinions might be. *Id.* Worse, the report provided nothing more than allusions to an examination and testing as the basis for these opinions. *Id.*

Unlike the expert in *Anderson-Bagshaw*, Dr. Murphy's report has at least some meat on the bone. For each patient, Dr. Murphy states a conclusion. [*E.g.*, R. 642-1 at 13 ("In caring for EM, the process, method, and actions of EHC providers were consistent with what I expect of health care providers whose intent is to care for patients and alleviate suffering.").] He points to facts in the patient's history that support that conclusion. *E.g.*, *id.* ("EM reported that her chronic pain was the result of an injury to her back[.] . . . EM reported decreased pain and improved function with Buprenorphine.").] Perhaps more details would be helpful to the Government. However, if the Government believes that the details reviewed by Dr. Murphy do not support his conclusions, it can attack the deficiency on cross-examination.

So, the defendants have produced a disclosure that at least minimally complies with Rule 16's substantive requirements. As the Government points out, it remains untimely under the Court's pre-trial order. [R. 652 at 4.] Rule 16 requires a defendant's disclosures to occur "sufficiently before trial to provide a fair opportunity for the government to meet the defendant's evidence." Fed. R. Crim. P. 16(b)(1)(B)(ii). Given the Defendants' invocation of the Sixth Amendment, the Court must determine whether purposes of Rule 16's timing requirement outweigh the defendants' interest in presenting a thorough defense. *See Vasilakos*, 508 F.3d at 410.

7

Because the tardiness of the disclosure should not prevent the Government from preparing for trial, strict compliance with the deadline is not necessary. Several factors make this situation unique. First, the Government's expert witness also reviewed the forty-four patients discussed by Dr. Murphy. [R. 574 at 3.] That familiarity should assist the United States as it prepares to attack Dr. Murphy's assessment of the treatment at issue. Second, after the Government moved to exclude Dr. Murphy's testimony, the Court continued trial from May 9, 2023, to June 12. That extension should provide time for the prosecution to review the supplemental disclosure. Third, Defendant Robert Taylor originally retained Dr. Murphy for trial. [R. 642 at 1.] Dr. Taylor subsequently pleaded guilty and will no longer go to trial. [R. 651.] The remaining Defendants merit some leniency as they pick up pieces of the trial strategy that they expected Dr. Taylor to handle.

Ultimately, the Court is unconvinced that upholding its prior order would violate the Defendants' Sixth Amendment right to present a complete defense. Their initial disclosure violated Rule 16, which justifies its exclusion. [*See* R. 620]; *Hardy*, 586 F.3d at 1043. Maintaining the status quo would ensure compliance "with established rules of procedure" rather than enforcing a requirement "with no legitimate purpose. *Mississippi*, 410 U.S. at 302; *Vasilakos*, 508 F.3d at 410. However, given their effort to cure the defects, the strong preference against exclusion, and the unique posture of this trial, the Court will exercise its discretion and find that justice requires reconsideration of its prior opinion. *Hofstetter*, No. 3:15-cr-27-TAV-DCP, 2019 U.S. Dist. LEXIS 211492, at *6. Dr. Murphy will be permitted to testify about the forty-four patients detailed in the supplemental disclosure at trial.

**B**

A few loose ends remain. The Government points out that the Defendants did not supplement Dr. Soper's disclosure. [R. 652 at 4.] Therefore, the Court's decision to exclude any testimony from Dr. Soper about specific patients will remain in effect. [*See* R. 620 at 15.] It also claims that Dr. Murphy's supplemental disclosure offers evidence that is inadmissible under a prior order. [R. 652 at 6.]

Therein, the Court prohibited Dr. Murphy from opining on the Defendants' subjective reasons for using a method of treatment but permitted him to discuss what the goal of an action might be in a typical, professional practice. [R. 620 at 26.] "[O]pinions that draw the ultimate conclusion regarding whether a defendant had the requisite intent to commit the crime charged are inadmissible, but opinions from which the jury can infer intent are admissible." *United States v. Gallion*, 257 F.R.D. 141, 155 (E.D. Ky. 2009). The United States claims that Dr. Murphy's disclosure opines that the Defendants intended some of the treatment provided to the forty-four patients to "alleviate suffering." [R. 652 at 6.] The Government is correct that a direct statement on the Defendants' intent would be inadmissible.

However, Dr. Murphy's supplemental disclosure at times offers admissible opinions on this subject. For example, while discussing patient EM, Dr. Murphy states that "the process, method, and actions of EHC providers were consistent with what I expect of health care providers whose intent is to care for patients and alleviate suffering." [R. 642-1 at 13.] As the Court previously explained, Dr. Murphy can "compare the Defendants' conduct to that of a physician operating within the usual course." [R. 620 at 6.] Such as statement "does not go to the ultimate issue of the Defendants' state of mind because there is a layer of inference between the statement and the conclusion." *Id.* (citing *Gallion*, 257 F.R.D. at 155).

9

Some of Dr. Murphy's statements in the supplemental disclosure appear to be of the admissible variety. Accordingly, Dr. Murphy may compare EHC's treatment to that of a typical physician who seeks to alleviate pain. To the extent that he goes farther, the Government may object at trial.

### III

Dr. Murphy's supplemental disclosure cures many of the ills present in his first attempt. While a court order is generally not an opportunity for a party to correct their mistake, the Court will permit Dr. Murphy's testimony to ensure the Defendants can fairly meet the Government's evidence. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The Defendants Motion to Reconsider **[R. 642]** is **GRANTED**;
2. Dr. Murphy may testify about the patients detailed in his supplemental disclosure [R. 642-1]; and
3. To the extent that it is consistent with this opinion, the remainder of the Court's Memorandum Opinion & Order [R. 620] on the United States's Motion *in Limine* remains in effect.

This the 12th day of May 2023.



Gregory F. Van Tatenhove
United States District Judge