UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 6:21-cr-00013-GFVT |
| | ) | |
| v. | ) | |
| | ) | **OPINION** |
| EVANN HERRELL, MARK GRENKOSKI, KERI MCFARLANE, and STEPHEN CIRELLI, | ) ) ) | **&** **ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

No province for confidential communication is older than that between attorney and client. Most commentators trace its origin to the reign of Queen Elizabeth I in seventeenth-century England. *Developments in the Law: Privileged Communications*, 98 Harv. L. Rev. 1450, 1456 (1985). For good reason, it is applied almost without exception, honoring the importance of a free and full exchange between counsel and client. But not entirely without exception.

This case presents one of those rare circumstances, so exceptional, that the privilege must yield to a constitutional value. And this opinion sets forth in greater detail the Court's ruling from the bench as to why that is so.

**I**

The Indictment charges the Defendants with numerous offenses arising from their employment at EHC Medical Offices. [R. 1.] Each of the four Defendants who proceeded to trial was a physician at EHC. *Id.* at 6-7. The Indictment charges them with conspiracies to unlawfully dispense controlled substances, make materially false statements in connection with

health care benefit programs, and commit money laundering. [*See generally* R. 1.] It also alleges direct money laundering offenses under 18 U.S.C. §§ 1956 and 1957. *Id.* at 23-30. Finally, it alleges that Defendants Herrell, Grenkoski, and McFarlane participated in conspiracies to commit wire fraud and health care fraud by their involvement in the submission of false claims for reimbursement for prescriptions and urine drug screens. *Id.* at 13-19.

Defendant Herrell took the stand during his case in chief. [*See* R. 734.] Before his testimony began, his counsel filed a motion seeking permission to elicit testimony covered by the attorney client privilege. [R. 730.] Specifically, he planned to testify:

> about statements made by E.J. Saad, in a meeting including himself and EHC ownership (Robert Taylor and Lori Barnett), in which E.J. Saad gave legal advice to EHC's ownership, providing them with a procedure that would allow patients of the clinic that used one of several health care benefits programs including, but not limited to, Medicare, Kentucky Medicaid, and TennCare, to continue to have their prescriptions covered by their respective health care benefits program.

[R. 730-1 at 1.] Herrell wanted to admit this testimony to support his good faith defense. *Id.*

The Government opposed this request, arguing that the statements were privileged and that the privilege had not been waived. After hearing the parties' arguments and considering Defendant Herrell's brief, the Court granted the Motion. [R. 735.] It explained its reasoning on the record but indicated that a more detailed order would follow establishing the grounds for permitting the testimony.

## II

Privileges are inherently anti-evidentiary devices designed to accomplish a policy goal, which the courts have deemed sufficiently important to overcome the presumption that relevant evidence is admissible. Fed. R. Evid. 402. The Federal Rules incorporate common law privileges. *Id.* One such privilege protects certain communications between attorneys and their clients. It "serves the function of promoting full and frank communications between attorneys

2

and their clients. It thereby encourages observance of the law and aids in the administration of justice." *Commodity Futures Trading Corp. v. Weintraub*, 471 U.S. 343, 348 (1985).

The Government argued that the statements about which Herrell sought to testify were privileged.  The Defendants did not substantively argue that the privilege did not apply.  The Court agrees that the statements were privileged.  A communication is privileged:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Fausek v. White*, 965 F.2d 126, 129 (6th Cir 1992).  EHC sought legal advice about prescribing in relation to Kentucky's Medicaid program from its lawyer, E.J. Saad.  He responded with advice in response to that request, which he shared with the EHC physicians and office manager. The privilege extends to advice shared with employees if they had "general policymaking authority [or] specific authority for the subject matter of the legal advice.  *Wrench LLC v. Taco Bell Corp.*, 212 F.R.D. 514, 517 (W.D. Mich. 2002).  Everyone with whom the advice was shared was directly involved in the process of submitting claims, either by nature of being a physician issuing prescriptions which the health care benefit programs would reimburse or by participating in the administrative process to submit those prescriptions.  Although the Defendants attempted to obtain a waiver from him, Robert Taylor, EHC's owner, did not waive the privilege.  Accordingly, Saad's advice about making prescriptions reimbursable for Kentucky Medicaid was privileged.

The Defendants nevertheless sought permission to elicit that testimony, invoking the Sixth Amendment right to present a defense.  [R. 730-1 at 4.]  The Court ultimately agreed that the Defendants' Sixth Amendment rights outweighed the interest in upholding the privilege.

3

**A**

A review of the legal landscape controlling application of the attorney client privilege in a criminal case is in order. The Supreme Court addressed the contours of the attorney client privilege in *Swidler & Berlin v. United States*, 524 U.S. 399, 408 (1998). It stated that "there is no case authority for the proposition that the privilege applies differently in criminal and civil cases" because it is impossible to know at the time a communication is made whether it will later be used in a criminal case. *Id.* "Balancing *ex post* the importance of the information against client interests, even limited to criminal cases, introduces substantial uncertainty into the privilege's application." *Id.* It noted that, as a result, it had previously "rejected use of a balancing test in defining the contours of the privilege." *Id.*

However, a footnote to that text reads, "[p]etitioners, while opposing wholesale abrogation of the privilege in criminal cases, concede that exceptional circumstances implicating a criminal defendant's constitutional rights might warrant breaching the privilege. We do not, however, need to reach this issue, since such exceptional circumstances clearly are not presented here." *Id.* at 408 n.3. Some courts have concluded that this reference to "exceptional circumstances" opens the door to piercing the attorney client privilege in criminal cases. *Newton v. Kemna*, 354 F.3d 776, 781 (8th Cir. 2004) (*Swidler* "expressly left open the question of whether a criminal defendant's constitutional rights might overcome the attorney-client privilege."); *United States v. Weisberg*, No. 08-cr-00347, 2011 U.S. Dist. LEXIS 37221, at *14 (E.D. N.Y. Apr. 5, 2011) ("As for the attorney-client privilege, the Supreme Court has left open the question of whether it may be overcome, 'in exceptional circumstances,' by a criminal defendant's constitutional right to present a defense."); *United States v. Sattar*, No. 02-cr-395, 2003 U.S. Dist. LEXIS 16164, at *55 (S.D. N.Y. Sept. 15, 2003) ("The Supreme Court has

4

expressly left open the question of whether a criminal defendant's constitutional rights may overcome the attorney-client privilege."); *United States v. Grace*, 439 F. Supp. 2d 1125 (D. Mont. 2006).

*United States v. Grace* most thoroughly discusses the interplay between the Sixth Amendment and the attorney client privilege following *Swidler*. *Id.* It was premised on Supreme Court precedent establishing that the Sixth Amendment protects "a defendant's right to present evidence in his defense." *Id.* at 1137 (citing, for example *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987) ("Our cases establish, at a minimum, that criminal defendants have the right … to put before a jury evidence that might influence the determination of guilt.")). *Grace* then summarized Supreme Court cases addressing conflicts between evidentiary rules and the Confrontation Clause. *Id.* at 1138-40. It concluded that the Court frequently uses a "balancing test in which the evidence or testimony sought to be introduced by the defendant is weighed against the policy behind the rule requiring that the evidence be excluded." *Id*. at 1140. Specifically, it found that "evidentiary rules . . . yield to Sixth Amendment rights where application of the rules of evidence would 'significantly undermine[] fundamental elements of the accused's defense.'" *Id.* (quoting *United States v. Scheffer*, 523 U.S. 303, 315 (1998)).

In line with those examples, the court applied that balancing test to the introduction of attorney-client communications in a criminal case. *Id.* It allowed the defendant to seek the admission of privileged communications at trial and indicated that it would rule on admission "on a document-by-document basis at trial, where the probative value of each bit of evidence can be evaluated in the context of the government's case and in light of what the evidence shows." *Id.* at 1142. The Ninth Circuit took a similar approach in *Murdoch v. Castro*, 365 F.3d 699 (9th Cir. 2004), *rev'd on other grounds by Murdoch v. Castro*, 609 F.3d 983 (9th Cir. 2010) (en

5

banc). It found that the defendant's Sixth Amendment rights may outweigh a speaker's attorney client privilege over an allegedly exonerating statement.[1] *Id.* at 701-02, 705.

Other courts disagree. For example, *United States v. Wells Fargo* noted that the right to present a defense is not absolute and rejected applying the balancing test to privileged communications. 132 F. Supp. 3d 558, 566 (S.D. N.Y. 2015). Notably, the court referenced the *Swidler* footnote's comment about exceptional circumstances and emphasized that such circumstances were not present because it was a civil case. *Id.* at 562 ("But this case is civil, not criminal, and therefore would not fall within such an exception even if it did exist."). The same result was reached, and same caveat noted, in *SEC v. Present*, 2015 U.S. Dist. LEXIS 170245, *9 (D. Mass. Dec. 21, 2015) ("The Court did leave open the possibility that 'circumstances implicating a criminal defendant's constitutional rights might warrant breaching the privilege.' *Swidler & Berlin*, 524 U.S. at 408 n.3. As Present faces civil charges, this potential exception does not apply here."). Finally, the Court in *United States v. Milton* relied on *Swidler* to reject application of the balancing test to privileged statements in a criminal case. *United States v. Milton*, 2022 U.S. Dist. LEXIS 162460, at *703 (S.D. N.Y. Sept. 8, 2022). It disagreed with *Grace*, quoting the *Wells Fargo* court's statement that "there are reasons to doubt that *Grace* was correctly decided." *Id.* at 702 (quoting *Wells Fargo*, 132 F. Supp. 3d at 565).

## B

This Court admitted the privileged testimony because it finds the cases that recognize "exceptional circumstances implicating a criminal defendant's constitutional rights" as grounds for piercing the privilege compelling. *Swidler*, 524 U.S. at 408 n. 3. In doing so, the Court's

---

[1] The decision was later reversed en banc. *Murdoch v. Castro*, 609 F.3d 983 (9th Cir. 2010) (en banc). It found that the balancing test is not "clearly established," so the first panel erroneously overruled the district court's denial of habeas relief. *Id.* at 995. However, the reversal was not premised on the initial decision being legally incorrect.

primary focus was on the policies underlying the privilege and Sixth Amendment rights. The policy underlying the attorney client privilege is to promote "full and frank communications between attorneys and their clients. It thereby encourages observance of the law and aids in the administration of justice." *Weintraub*, 471 U.S. at 348. On the other hand, the Sixth Amendment protects "the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 401 U.S. 284, 294 (1973).

    The cases make clear that privileges can bend to constitutional rights. The Sixth Circuit has explicitly ruled that "[a]lthough important, the attorney-client privilege is not absolute; it applies only to the extent that it serves the 'broader public interests.'" *Fausek*, 965 F.2d at 129 (citing *In re Antitrust Grand Jury*, 805 F.2d 155, 162 (6th Cir. 1986)). Protecting a criminal defendant's constitutional rights can serve the "broader public interests" more than the attorney client privilege. *Fausek*, 965 F.2d at 129. Accordingly, this Court finds that the attorney client privilege may be pierced if a criminal defendant's interest in his Sixth Amendment rights outweighs the privilege-holder's interest in maintaining the privilege. This case is an example of "exceptional circumstances implicating a criminal defendant's constitutional rights [which] might warrant breaching the privilege." *Swidler*, 524 U.S. at 408 n.3.

    This is a fact-dependent inquiry that should be conducted statement-by-statement. *See Grace* at 439 F. Supp. 2d at 1142. Applying that test in the instant matter easily leads to admitting the privileged statements. The defense has a strong interest in admitting Saad's statements. They contend that the statements contribute to their good faith defense. [R. 73-1 at 3-4.] Specifically, Herrell believes that Saad's advice that EHC could swap prescribers on Medicaid prescriptions mitigates part of the wire and health care fraud charges. This argument is not as compelling as when a defendant pursues the advice of counsel defense, which is a

7

complete defense to a fraud charge. Here, the Defendants elected not to seek an advice of counsel instruction, likely because other elements of the Defendants' conduct support the wire and health care fraud charges. But the evidence still has substantial probative value because, if believed, it would weigh against the Defendants' intent to defraud in regard to the doctor-switching scheme for prescriptions reimbursed by Kentucky Medicaid.

On the other hand, application of the privilege has little import here. The attorney client privilege promotes "full and frank communications between attorneys and their clients. It thereby encourages observance of the law and aids in the administration of justice." *Weintraub*, 471 U.S. at 348. Disclosing Saad's communication to the Defendants has a minimal, if any, chilling effect on "full and frank communications" because it contributes to the defense. *Id.* The substantial probative value of the testimony outweighs the minimal import of the privilege. Accordingly, this case constitutes an "exceptional circumstance" in which the Defendants' Sixth Amendment rights outweigh application of the attorney client privilege. *Swidler*, 524 U.S. at 408 n.3.

This the 12th day of June 2024.

Gregory F. Van Tatenhove
United States District Judge